# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 1461 | DATE | 9/26/2001 |
| CASE TITLE | Panduit Corp. vs. Band-It-Idex, Inc. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 10/16/01 at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Panduit's motion for summary judgment (Doc. No. 61-1) is granted, and Band-It's motion for summary judgment (Doc. No. 45-1) is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 26 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 SEP 26 PM 4:59 | 9/26/2001 date mailed notice | |
| ETV courtroom deputy's initials | | Date/time received in central Clerk's Office | ETV mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PANDUIT CORPORATION,           )
                               )
        Plaintiff,              )
                               )
    v.                          )    No. 00 C 1461
                               )
BAND-IT-IDEX, INC.,             )    Judge Rebecca R. Pallmeyer
                               )
        Defendant.              )

## MEMORANDUM OPINION AND ORDER

This is an action for patent infringement between two manufacturers of cable ties, which are thin strips of metal used to hold objects together in a bundle. Plaintiff Panduit Corporation ("Panduit") filed this action on March 9, 2000, charging Defendant Band-It-Idex, Inc. ("Band-It") with infringing United States Patent No. 5,103,534 (the "'534 Patent"), issued to Panduit on April 24, 1992, for a "Selectively Coated Cable Tie." Exercising limited consent jurisdiction[1], Magistrate Judge Sidney I. Schenkier issued a preliminary injunction on June 27, 2000, enjoining Band-It from making, selling, offering to sell, or using selectively coated cable ties that infringe the '534 Patent. *Panduit Corp. v. Band-It-Idex, Inc.*, No. 00 C 1461, 2000 WL 1121554 (N.D. Ill. June 27, 2000). Band-It sought reconsideration, but Judge Schenkier denied it, *Panduit Corp. v. Band-It-Idex, Inc.*, No. 00 C 1461, 2000 WL968811 (N.D. Ill. June 27, 2000), and the preliminary injunction order is on appeal to the Federal

---

[1] The parties consented for Magistrate Judge Schenkier to enter a ruling on the preliminary injunction pursuant to 28 U.S.C. § 636(c) and Northern District of Illinois Local Rule 73.1. This "limited consent" procedure has been upheld by the Seventh Circuit. *See Hains v. Washington*, 131 F.3d 1248, 1249 (7th Cir. 1997).

Circuit. Both sides have now moved for summary judgment, effectively agreeing, as they did before Judge Schenkier, that the issues can be decided without an evidentiary hearing.

Because Judge Schenkier's Memorandum Opinion and Order granting Panduit's motion for preliminary injunction provides a detailed description of the factual background, this court will not repeat that description. Instead, the court presumes the reader's familiarity with the facts and focuses on Band-It's arguments in support of summary judgment: Band-It argues, first, that the reference in the `534 Patent to "lateral sharp edges of the strap" is a claim limitation not infringed by the accused Band-It products because they have been through a skiving process to smooth the edges of the strap. Second, Band-It alleges that the patent's "coating means" claim limitation is properly construed as being limited to the process of extrusion. Accordingly, the Band-It products, which do not undergo an extrusion process, do not infringe the `534 Patent. Third, Band-It contends, contrary to Magistrate Judge Schenkier's conclusion on the issue, that the "locking means" claim limitation refers solely to the locking mechanism specified in an earlier patent, the `592 Patent. Because the locking mechanism of the accused Band-It product differs from the one described in the `592 Patent, Band-It contends that the accused product does not infringe the `534 Patent. In its opposition to Band-It's motion for summary judgment and in its own cross-motion for summary judgment, Panduit argues that "lateral sharp edges" is not a claim element, and that the accused product, Band-It's Ball-LokTM, has both "coating means" and "locking means," as those terms are properly understood in

the '534 Patent. For the following reasons, Panduit's motion for summary judgment is granted, while Band-It's motion is denied.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent." *Ecolab, Inc. v. Envirochem, Inc.*, No. 00-1402, __ F.3d __, 2001 WL 1013351, *4 (Fed. Cir. Sept. 6, 2001), quoting *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998). When both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Ecolab*, 2001 WL 1013351 at *4.

Determining whether an accused device infringes a patent claim is a two step process. "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Ecolab*, 2001 WL 1013351 at *5, quoting *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993). Claim construction is an

issue of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996). Patent infringement, whether literal or under the doctrine of equivalents, is a question of fact, but summary judgment may be appropriate when there is no genuine issue of material fact or when, drawing all factual inferences in favor of the nonmoving party, no reasonable jury could return a verdict for the nonmoving party. *Kustom Signals, Inc. v. Applied Concepts, Inc.*, No. 99-1564, __ F.3d __, 2001 WL 1007938, *4 (Fed. Cir. Sept. 5, 2001). In this case, the parties are in agreement that there are no material factual disputes on the infringement issue, and that summary judgment here turns purely on the court's construction of the subject claim limitations. (Memorandum in Support of Panduit's Cross-Motion for Summary Judgment of Infringement, at 7; Band-It's Opposition to Panduit's Motion for Summary Judgment, at 1.)

## II. Claim Construction

The central and dispositive issues in this case involve the interpretation of the three aspects of the '534 Patent that Band-It argues are not infringed by the accused product. The court considers these aspects in turn.

### A. "Lateral Sharp Edges"

Claim 1 of the '534 Patent claims: "[a] strap having a coating means for covering lateral sharp edges of the strap to prevent abrasion of objects that come into contact with the edges of the tie . . ." ('534 Patent Col. 2, Lines 31-34.) Band-It characterizes the reference in claim 1 to "lateral sharp edges" as a claim limitation. Band-It looks to the "Background of the Invention" section of the specifications to define this claim

4

limitation. That section explains that "[c]oated metal ties do not require the relatively expensive manufacturing step of forming a smooth radius on the sharp edges of each tie after it is slit from the stock, thus decreasing the manufacturing cost of the coated ties." ('534 Patent Col. 1, Lines 11-15.) Band-It therefore concludes that the "lateral sharp edges" language limits the Patent's claims and requires that the strap not have undergone the "manufacturing step of forming a smooth radius on the sharp edges."

Panduit disputes Band-It's assertion that the reference to "lateral sharp edges" is a claim limitation. The court finds it unnecessary to decide the issue, however, because whether the words "lateral sharp edges" are claim limitations or not, those words are neither defined nor limited by whether or not the product has been through a manufacturing step to smooth its edges.

Even if Band-It were right that "lateral sharp edges" is a claim limitation, the method by which Band-It seeks to define the term violates the clear principle that, although a claim is to be read "in view of the specification[s]," *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), the limitations of a specification should not be read into the claims. *Thomson Consumer Electronics, Inc. v. Innovatron, S.A.*, 43 F. Supp. 2d 26 (D.D.C. 1999). There is but one reference in all of the '534 Patent to the manufacturing step that forms smooth edges on the otherwise sharp edges of the straps. This reference is in the specifications, not in the claims, and it is not written as a definition of the term "lateral sharp edges." ('534 Patent Col. 1, Lines 11-15.) Furthermore, to construe it as such requires a leap that ignores the remainder of the language in the specifications, as well as the language in the claims.

Again, to the extent that "lateral sharp edges" is a claim limitation, it has to be interpreted according to the settled principle that claim construction begins with the wording of the claims, and the words and phrases of the claim are to be given their customary, ordinary meanings, unless it appears that the inventor intended otherwise. *See, e.g., Thomson*, 43 F. Supp.2d at 30; *Bell Communications Research, Inc., v. Vitalink Communications Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995). Band-It has not suggested, nor does the court find any reason to believe, that "sharp edges" means anything other than "sharp edges" as those words are regularly understood. This is certainly not a term "so amorphous that one of skill in the art can only reconcile the claim language with the inventor's disclosure by recourse to the specification." *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998), noting *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed. Cir. 1988) (stating that the specification can supply understanding of unclear terms, but should never trump the clear meaning of the claim terms). Band-It has presented no reasoning to suggest that the term "lateral sharp edges" requires further interpretation, and to the extent it does, the court finds that the most plausible definition of "lateral sharp edges" in the context of the entire `534 Patent is: edges capable of cutting or causing abrasion.

The term "lateral sharp edges" simply does not require reference to the specifications to enlighten the reader as to its meaning. Putting that fact aside, however, the meaning proffered by Band-It strains logic. Every reference in the `534 Patent to "lateral edges," "sharp edges" or "lateral sharp edges" is paired with the

6

claim limitation "coating means" and its identified function of preventing abrasion with objects that come into contact with the tie. This is consistent with the object of the invention, defined in the patent summary as: "the provision of a cable tie having coated lateral edges to protect objects that come into contact with the lateral edges of the tie where the coating does not interfere with the effectiveness of the locking mechanism of the tie." ('534 Patent Col. 1, Lines 26-30.) Throughout the '534 Patent, the clear goal and function of the coating means is to prevent abrasion, not to avoid the extra mechanized step of smoothing the edges. Absent specific language to suggest it, it makes little sense to presume that Panduit only intended to prevent abrasion that results from the fact that the edges have not undergone a mechanical process to create smooth edges. If the ties have been through a mechanized smoothing process, but for whatever reason still have edges capable of causing abrasion, as with the accused Band-It ties, nothing in the '534 Patent suggests that these ties are outside of its scope. Band-It's suggestion otherwise, contrary to settled principle in this area of law, ignores a clear, plain reading of a phrase in favor of a strained interpretation.

Rather than defining or limiting the term "lateral sharp edges," the single reference in the specifications to avoiding the mechanized smoothing process is properly characterized as citing an advantage of the "coating means." In this court's view, it would be "improper to read this advantage from the specifications into the claims as a requirement of the inventions themselves." *Dow Chemical Company v. Astro-Valcour, Inc.*, 47 F. Supp. 2d 294, 299 (N.D.N.Y. 1999). The court concludes that whether or not a cable tie's edges have been through a mechanized smoothing process

7

does not affect whether or not such ties fall into the `534 Patent's claim regarding a "strap having a coating means for covering lateral sharp edges of the strap." Thus, Band-It is unable to distinguish its accused product from the `534 Patent claims merely by reference to the phrase "lateral sharp edges."

Notably, a different conclusion on this issue would not require summary judgment in favor of Band-It. In this court's view, the accused Band-It products do have "lateral sharp edges" as that term is used in the `534 Patent. Although Band-It utilizes a mechanized process to smooth the edges of the ties, this fact alone is not determinative of whether or not there are "lateral sharp edges." Band-It itself acknowledged in its reply in support of its motion for summary judgment that it does not "fully radius," or fully round the edges. (Band-It's Reply in Support of Its Motion for Summary Judgment of Non-Infringement ("Band-It's Reply") at 3.) This acknowledgment is consistent with the deposition testimony of Band-It's Rule 30(b)(6) witness, Hans Hinnen, that the lateral edges of the accused straps are sharp. (Hinnen Deposition, at 74:22-75:2.) Band-It argues that "there is no indication that Mr. Hinnen defined 'sharp' consistent with the proper construction of that term in the `534 Patent," and that "Panduit's counsel never instructed Mr. Hinnen regarding the correct meaning of the term." (Band-It's Reply at 3.) In light of this court's determination that the phrase "lateral sharp edges" in the `534 Patent should be read to have its ordinary meaning, however, the witness did not require any special instruction. Further evidence that the edges of Band-It's cable ties are sharp within the meaning of the `534 Patent is that Band-It coats them: Band-It's Rule 30(b)(6) witness testified that the

coating prevents "chaffing or damaging." (Hinnen Deposition, at 74:22-75:2.) Significantly, Band-It offers no explanation as to why it would coat its cable ties at all if not to prevent abrasion caused by the lateral sharp edges.

### B. "Coating Means"

For much of the same reasons it has rejected Band-It's argument with respect to "lateral sharp edges," the court also rejects the argument that the "coating means" claim limitation means only coating that is applied through an extrusion process.

Band-It acknowledges in its motion for summary judgment that the term "coating means" is written in means-plus-function language. Therefore, it must be interpreted under and limited by 35 U.S.C. § 112, ¶ 6. *See, e.g., O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1580-81 (Fed. Cir. 1997). Section 12, ¶ 6 provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 122, ¶ 6 (1994). The statute refers to means and steps, which must be supported by structure, material, or acts, but the statute does not clarify whether structure, material, or acts corresponds with means or with steps. The Federal Circuit has concluded that "the word 'means' clearly refers to the generic description of an apparatus element, and the implementation of such a concept is obviously by structure or material," while the word "'steps' . . . refer[s] to the generic description of elements of a process, and the term 'acts' . . . refer[s] to the implementation of such steps." *O.I. Corp.*, 115 F.3d at 1582-83. With this understanding, the Federal Circuit further

9

clarified that "structure" and "material" are associated with means-plus-function claim elements, while "acts" are associated with step-plus-function claim elements. *Seal-Flex, Inc. v. Athletic Track and Court Const.*, 172 F.3d 836 (Fed. Cir. 1999), citing *O.I. Corp.*, 115 F.3d at 1583.

In the patent at issue here, "coating means" refers to the generic description of an apparatus element, rather than the generic description of elements of a process. Thus, the court agrees with the parties' determination that the term coating means is written in means-plus-function language. Once the court has established that a means-plus-function limitation is at issue, it must interpret that limitation by determining, first, what the claimed function is, and second, what structures disclosed in the specifications correspond to the "means" for performing that function. *See, e.g., Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir.2001); *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1360 (Fed. Cir. 2000).

Although Band-It agrees that the term "coating means" establishes a "means-plus-function" limitation, Band-It appears to have misunderstood the import of this determination. In its motion for summary judgment, Band-it states that coating means was written in means-plus-function language, and then notes the § 112, ¶ 6 rule that this term should be construed as limited to the "corresponding structure, material, *or acts* described in the specification and equivalents thereof." (Band-It's Motion for Summary Judgment, at 7, quoting 35 U.S.C. §112, ¶ 6 (emphasis in Band-It's Motion).)

10

Band-It hangs its hat on the fact that the only "act" mentioned with respect to coating in the `534 Patent's specifications is extrusion. As such, Band-It concluded that the extrusion process limited the coating means claim element, such that any coating not applied by the extrusion process would not infringe this claim element. As the Federal Circuit has explained, however, "acts" are not associated with means-plus-function claim elements, but rather, only "structure" and "material" are so associated. In light of this clarification, the act of extrusion becomes irrelevant in defining the term coating means. *See O.I. Corp.*, 115 F.3d at 1582-83. Only "structure" and "material" are to be used to define coating means. *Id.*

To properly understand the term coating means, the court must first identify its claimed function. *Medtronic*, 248 F.3d at 1311; *Kemco*, 208 F.3d at 1360. The specified function of the coating means is to "to prevent abrasion." `534 Patent Col.2, Line 32. Next, the court must identify the structures disclosed in the specifications that correspond to the "means" for performing the abrasion prevention function. Id. The structure or material identified in the specifications to perform the abrasion prevention function is Nylon 11 and its equivalents. (`534 Patent Col.1, Line 8; Col. 2, Line 5.) Thus, coating means in the `534 Patent refers to a coating of Nylon 11, or equivalents thereto, used to prevent abrasion. This conclusion is also consistent with claim 4 of the `534 Patent which states: "[a] tie as set forth in Claim 1, wherein the coating means is a nylon coating." (`534 Patent Col. 2, Lines 54-55.)

## C. "Locking Means"

Finally, in its motion for summary judgment, Band-It again raised the argument that the accused product does not contain "locking means" as that term is properly construed in the `534 Patent. This was the sole issue before the Magistrate Judge when he granted Panduit's motion for a preliminary injunction, and this court wholly agrees with and herein adopts his reasoning and conclusions in *Panduit Corp. v. Band-It-Idex, Inc.*, No. 00 C 1461, 2000 WL 1121554, *6-7 (N.D. Ill. June 27, 2000). In that case, the Magistrate Judge construed the definition of "locking means" differently than Band-It argued it should be construed. The parties agreed that "locking means" was written in means-plus-function language, which, pursuant to 35 U.S.C. § 112, ¶ 6, requires identification of the structure in the specification that performs the recited function, which may embrace more than the preferred embodiment. *Id.* at *13-15, referring to *Micro Chemical, Inc. v. Great Plains Chemical Co.*, 194 F.3d 1250, 1257-58. While Band-It argued that "locking means" was limited to the specific locking mechanism identified in the earlier `592 Patent, Judge Schenkier concluded that the reference to the `592 Patent was an illustration of the preferred embodiment, and thus, should not be incorporated as a claim limitation. In summary, he determined that the claimed function of the `534 Patent is identical to the function performed by the accused device and the structure used by the accused product is identical to the structure claimed by the `534 Patent. Thus, Judge Schenkier concluded that Panduit had a substantial likelihood of success in proving that Band-It's coated Ball-Lok™ cable tie literally infringes the `534 Patent. For the reasons set forth here and in

12

Judge Schenkier's opinion, the court concludes that Band-It's device does contain "locking means" as defined in the `534 Patent.

III. Infringement

Having determined the proper construction of the subject claim limitations, the next task is to decide whether or not the accused Band-It product infringes the `534 Patent's claims. To show infringement, a patentee must supply sufficient evidence to prove that the accused product or process contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim. *See, e.g., Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001; *Seal-Flex, Inc. v. Athletic Track and Court Const.*, 172 F.3d 836, 842 (Fed. Cir. 1999). Any deviation from the claim precludes such a finding. *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996).

Band-It has denied infringement with respect to the three aspects of the `534 Patent discussed above, namely, (A) "lateral sharp edges," (B) "coating means," and (C) "locking means."

A. "Lateral Sharp Edges"

As discussed above, it is not necessary for the court to decide whether or not "lateral sharp edges" is properly considered a claim limitation. Such a determination is unnecessary because Band-It's proposed interpretation of the term "lateral sharp edges" as meaning only those edges that have not been through a mechanized smoothing process, for the reasons discussed above, is both implausible and contrary to law. Furthermore, the accused Band-It product does have lateral edges that are

capable of causing abrasion such that coating to prevent abrasion is appropriate, and because this is all that is contemplated by the use of the term "lateral sharp edges" in the `534 Patent, Band-It's product cannot be differentiated on this basis. Finally, to the extent that "lateral sharp edges" is a claim limitation, the accused Band-It product, having "lateral sharp edges," infringes it.

### B. "Coating Means"

**(1) Literal Infringement.** The "coating means" claim limitation was written in means-plus-function language. Literal infringement of a claim containing a means-plus-function clause requires that the accused device perform the identical function as that identified in the means clause and do so with structure that is the same or equivalent to that disclosed in the specification. *Valmont Industries, Inc. v. Reinke Mfg. Co.*, 983 F.2d 1039, 1042 (Fed. Cir. 1993). An equivalent structure is one that (i) performs the identical function, and (ii) is otherwise insubstantially different with respect to the structure. *See Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999).

The identified function of the "coating means" is to prevent abrasion. Band-It's Rule 30(b)(6) witness stated in his deposition that the accused Band-It product has a nylon coating over the edges of its strap to prevent "chaffing or damaging," in other words, abrasion. Band-It has not disputed this fact. Therefore, the court concludes that the nylon coating on the accused Band-It product performs the identical function as the "coating means" specified in the `534 Patent.

The `534 Patent specifies that the structure or material to perform the abrasion

14

prevention function is Nylon 11 and its equivalents. In arguing that the coating structure of the accused Band-It product differs from that in the `534 Patent, Band-It relies primarily on the argument that its nylon coating is not applied through the extrusion process as the coating in the `534 Patent is, but rather, it is applied by electrostatic spraying. This court has already concluded that the process by which the coating is applied does not limit the scope of the claim's means-plus-function language. As such, the fact that Band-It's product's coating is applied differently than Panduit's is irrelevant to the infringement analysis.

Band-It also argued that even if Panduit is correct that the process of applying the coating was irrelevant, the accused product still does not infringe because its coating is of a different structure or material than that specified in the `534 Patent. Band-It bases this argument on the testimony of Panduit's 30(b)(6) witness who stated that Nylon 11 displays different surface characteristics depending on whether it is applied through extrusion or electrostatically. The extent of this differentiation, however, is that when the Nylon 11 is applied through extrusion, it looks smooth and shiny, while when Nylon 11 is applied electrostatically, it appears more like an orange peel. (Deposition of Bernard J. O'Grady, at 40-42.) Significantly, this testimony was not a comparison of the product identified in the `534 Patent with the accused Band-It product. Rather, the witness's statements referred to surface conditions of nylon as it "typically" appears when applied electrostatically versus a specific product[2] seen by the

---

[2] Presumably the product actually seen by the witness was one on which (continued...)

witness. (Panduit's Sur-Reply to Band-it's Motion for Summary Judgment of Non-Infringement, at 5.) The court finds it significant that Band-It suggested no reason why this difference in appearance might be anything but insubstantial. If Band-It had decided that its product should have a so-called orange-peel surface, as opposed to a smooth one, for any functional reason, surely it would have offered such an explanation. Merely pointing out that the surfaces look slightly different, without any clarification as to why the difference matters, makes it impossible to conclude that this difference is anything but insubstantial, no different than if the surface were red instead of black. Thus, because the nylon coating on the accused Band-It product serves the identical function, namely, abrasion prevention, as the function specified for coating means in the `534 Patent, and because it serves this function with an equivalent structure, namely Nylon 11 that differs only insubstantially from the Nylon 11 used per the `534 Patent, the accused Band-It product literally infringes the "coating means" claim limitation of claim 1 of the `534 Patent.

**(2) Doctrine of Equivalents.** Even if the court had decided that the accused Band-It product did not literally infringe the "coating means" claim limitation, it would find infringement of the "coating means" claim limitation under the doctrine of equivalents. A determination of infringement under the doctrine of equivalents involves a three-part test. An accused device is an equivalent that infringes if it (i) performs substantially the same overall function or work, (ii) in substantially the same

---

[2](...continued)
the coating had been extruded, however, the record is unclear on this point.

way, (iii) to obtain substantially the same overall result as the claimed invention. *Valmont Industries, Inc. v. Reinke Manufacturing Co.*, 983 F.2d 1039, 1043 (Fed. Cir. 1993). The purpose of the doctrine of equivalents is to prevent a potential infringer from evading patent claims by making insubstantial changes to the claimed product. *Charles Greiner & Co. v. Mari-Med Mfg., Inc.*, 962 F.2d 1031, 1036 (Fed. Cir. 1992). The record is devoid of evidence to convince the court that the mere slight change to the surface quality of the coating, a change made for no identifiable reason, constitutes anything but an insubstantial change. The court finds that the nylon coatings on both the accused Band-It product and the Panduit cable tie (i) perform substantially the same function (the prevention of abrasion of items that come into contact with the lateral edges), (ii) in substantially the same way (with a coating of nylon covering the lateral edges of the band), (ii) to achieve substantially the same overall result as the claimed invention (a cable tie having coated lateral edges to protect objects that come into contact therewith, where the coating does not interfere with the effectiveness of the locking mechanism of the tie). Thus, in addition to literally infringing the "coating means" claim limitation of claim 1, the accused Band-It product also infringes under the doctrine of equivalents.

C.    "Locking Means"

For the same reasons that the Magistrate Judge found that Panduit had a reasonable probability of proving that the locking mechanism of the accused Band-It product literally infringes the "locking means" claim limitation of the '534 Patent, this court finds that the locking mechanism of the accused Band-It product does literally

infringe the "locking means" claim limitation of the `534 Patent.

## CONCLUSION

In light of its construction of the disputed claim elements, the court concludes that Band-It infringes each claim of the `534 Patent. Panduit's motion for summary judgment (Doc. No. 61-1) is granted, and Band-It's motion for summary judgment (Doc. No. 45-1) is denied.

ENTER:

Dated: September 26, 2001

REBECCA R. PALLMEYER
United States District Judge